IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| LOW COUNTRY RURAL HEALTH | ) | |
| EDUCATION CONSORTIUM, INC., | ) | No. 9:14-cv-00874-DCN |
| *d/b/a* HARRISON PEEPLES | ) | |
| HEALTHCARE CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| GREENWAY MEDICAL | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the following motions:  defendant Greenway

Medical Technologies, Inc.'s ("Greenway") motion to stay and compel arbitration,

motion to dismiss or alternatively for a more definite statement, and motion for a

protective order; and plaintiff Low Country Rural Health Education Consortium, Inc.

d/b/a Harrison Peeples Healthcare Center's ("Low Country") motion to remand, motion

to stay deadlines or alternatively for an extension of time, and motion to strike.  For the

reasons set forth below, the court grants Greenway's motion to compel arbitration and

dismisses the action without prejudice, denies Low Country's motion to remand, and

denies Low Country's motion to strike.  Accordingly, the remaining motions are rendered

moot.

## I.  BACKGROUND

Low Country is a healthcare provider located in Hampton County, South

Carolina.  Greenway is an electronic medical records software provider doing business in

Carroll County, Georgia.  On February 29, 2012, Low Country and Greenway entered

1

into a software license and services agreement for the purchase and installation of a medical records software program.  Compl. ¶ 4.  Low Country filed suit on January 30, 2014 in the Hampton County Court of Common Pleas.  Low Country alleges that Greenway warranted that its system would enable Low Country to bill its patients and manage its medical practice and that the system would be installed in a professional and workmanlike manner.  Id.  Low Country further alleges that the system failed to perform as warranted and that Low Country was forced to revert to the system in place prior to the agreement.  Id. ¶ 5.  Lastly, Low Country claims that Greenway's agent misrepresented that the system had not experienced any problems and that it operated properly and efficiently in other offices.  Id. ¶ 8.

Greenway filed a notice of removal on March 12, 2014 asserting diversity jurisdiction under 28 U.S.C. § 1332.  On March 19, 2014, Greenway filed a motion to stay and compel arbitration and a motion to dismiss.  Low Country filed responses to both motions on April 21, 2014, and Greenway replied to both motions on May 15, 2014. On May 4, 2014, Low Country filed a motion to remand and a motion to stay deadlines or alternatively for an extension of time.  Greenway filed a response to Low Country's motion to remand on May 6, 2014, and Low Country filed a reply on May 8, 2014.  Low Country filed a motion to strike on May 27, 2014, to which Greenway responded on June 13, 2014.  On August 29, 2014, Greenway filed a motion for a protective order to stay discovery.  Low Country filed a response to Greenway's motion for a protective order on September 15, 2014, and Greenway filed a reply on September 25, 2014.  These motions have all been fully briefed and are now ripe for the court's review.

2

## II.  STANDARDS

### A.  Motion to Remand

The right to remove a case from state court to federal court is derived from 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  The party seeking to remove a case from state court to federal court bears the burden of demonstrating that jurisdiction is proper at the time the petition for removal is filed.  Caterpillar Inc. v. Lewis, 519 U.S. 61, 73 (1996).  If federal jurisdiction is doubtful, remand is necessary.  Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); Pohto v. Allstate Ins. Co., No. 10-2654, 2011 WL 2670000, at *1 (D.S.C. July 7, 2011) ("Because federal courts are forums of limited jurisdiction, any doubt as to whether a case belongs in federal or state court should be resolved in favor of state court.").  District courts have original diversity jurisdiction over a case "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a)(1).

### B.  Standard for Arbitration Under the FAA

Section 4 of the Federal Arbitration Act ("FAA") provides in part that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  "[Q]uestions of arbitrability must be addressed with a healthy regard for the

3

federal policy favoring arbitration. . . . [A]ny doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v.

Mercury Constr. Corp., 460 U.S. 1, 23–24 (1983); Peoples Sec. Life Ins. Co. v.

Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (internal citations omitted).

To that end, "the heavy presumption of arbitrability requires that when the scope of the

arbitration clause is open to question, a court must decide the question in favor of

arbitration." Peoples, 867 F.2d at 812 (citing United Steelworkers of Am. v. Warrior &

Gulf Navigation Co., 363 U.S. 574, 583 (1960)). Thus, the court may not deny a party's

request to arbitrate an issue "unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

Id.

Despite these policies favoring arbitration, federal courts have the authority to

evaluate the validity of arbitration agreements. See Prima Paint Corp. v. Flood &

Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967) ("[A] federal court may consider only

issues relating to the making and performance of the agreement to arbitrate."). Section 2

of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. "If a party challenges the validity under § 2 of the precise

agreement to arbitrate at issue, the federal court must consider the challenge before

ordering compliance with that agreement under § 4." Rent–A–Center, West, Inc. v.

Jackson, 561 U.S. 63, 71 (2010). While federal law governs the arbitrability of disputes,

state law governs issues regarding contract formation. Am. Gen. Life & Accident Ins.

<u>Co. v. Wood</u>, 429 F.3d 83, 87 (4th Cir. 2005).  A court shall compel arbitration pursuant

to the FAA if a party demonstrates:

> (1) the existence of a dispute between the parties, (2) a written agreement
> that includes an arbitration provision which purports to cover the dispute,
> (3) the relationship of the transaction, which is evidenced by the
> agreement, to interstate or foreign commerce, and (4) the failure, neglect
> or refusal of [a party] to arbitrate the dispute.

<u>Id.</u> (citing <u>Adkins v. Labor Ready, Inc.</u>, 303 F.3d 496, 500–01 (4th Cir. 2002)).

### C.  Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may

strike from a pleading an insufficient defense or any redundant, immaterial, impertinent,

or scandalous matter."  Fed. R. Civ. P. 12(f).  "Rule 12(f) motions are generally with

disfavor 'because striking a portion of a pleading is a drastic remedy and because it is

often sought by the movant simply as a dilatory tactic.'"  <u>Waste Mgmt. Holdings, Inc. v.

Gilmore</u>, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur

R. Miller, <u>Federal Practice & Procedure</u> § 1380 (2d ed. 1990)).

## III.  DISCUSSION

### A.      Motion to Remand

Low Country moves pursuant to 28 U.S.C. §§ 1446–1447 to remand this action to

the Hampton County Court of Common Pleas.  Pl.'s Mot. 1.  Low Country argues that

any determination regarding the applicability and enforceability of the arbitration

agreement must be made in Hampton Country where Low Country has its "place of

business" under section 15-48-190 of the South Carolina Uniform Arbitration Act

("SCUAA").  Pl.'s Mot. 1.

In its motion to remand, Low Country does not allege any defect in the removal procedure.  Further, Low Country does not challenge this court's jurisdiction under 28 U.S.C. § 1332.  Rather, Low Country relies solely on S.C. Code Ann. § 15-48-190, which states that if a location for an arbitration hearing is not provided in the arbitration agreement, "the application shall be made in the county where the adverse party resides or has a place of business or, if he has no residence or place of business in this State, to the court of any county."  S.C. Code Ann. § 15-48-190.  Low Country's reliance on this section is misguided.  Section 15-48-190 applies only to initial applications to compel arbitration pursuant to agreements that do not involve pending actions.  Id.  Low Country's claims are pending before this court.  Therefore, section 15-48-20(c) applies, which states "[i]f an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subdivision (a) of this section, the application shall be made therein."  S.C. Code Ann. § 15-48-20(c) (emphasis added).  Section 15-48-20(a) does not outline jurisdictional requirements or divest this court of jurisdiction; rather, the section provides jurisdiction to any court in which the application is filed.  Id. § 15-48-20(a).  Therefore, under the SCUAA, when an arbitration agreement involves a pending action, an application to compel arbitration should be made in the court in which the matter is pending.  Id. Accordingly, under section 15-48-20(c), Greenway's motion to compel arbitration before this court is proper.  For the foregoing reasons, the court denies Low Country's motion to remand.

### B.      Motion to Stay and Compel Arbitration

On or about February 29, 2012, Low Country entered into a contract with

Greenway under which Greenway would "provide hardware, software, and related

products" to assist in Low Country's medical practice.  Compl. ¶ 3.  The first page of the

sixteen page contract contains the following provision:

> NOTICE:     THIS AGREEMENT IS SUBJECT TO ARBITRATION
> PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION
> ACT, SECTION 15-48-10 ET SEQ. OF THE CODE OF LAWS OF
> SOUTH CAROLINA.

Def.'s Mot. Ex. 1, 1.  Low Country's executive director, Harold B. Harvey ("Harvey"),

and William G. Esslinger, Jr., vice president and general counsel for Greenway, signed

both the first and last pages of the contract.  Def.'s Mot. to Compel Ex. 1, at 1, 16.  Low

Country brings this action against Greenway asserting breach of warranty and

misrepresentation claims.[1]

Greenway moves to compel arbitration pursuant to the FAA.  Low Country

opposes Greenway's motion to compel arbitration on three grounds.  First, Low Country

argues that the arbitration provision is not enforceable under South Carolina law because

it is not underlined in compliance with the notice requirements of the SCUAA.  Low

Country next argues that the arbitration provision is unconscionable and therefore should

not be enforced.  Lastly, Low Country argues that its claims fall outside the scope of the

arbitration provision.[2]

---

[1] In its response to Greenway's motion to compel arbitration, Low Country argues that its claims are essentially for fraud, even though they are not labeled as such.  Pl.'s Resp. 8–9.

[2] Low Country moves this court to strike Greenway's arguments made in its reply, as well as the second affidavit of Joel W. Tisinger ("Tisinger") attached to its reply.  Rule 12(f) permits the court, on motion of either party, to strike "from any *pleading* any insufficient defense or redundant, immaterial, impertinent or scandalous matter."  Fed.R.Civ.P. 12(f) (emphasis added).  Low Country attempts to use this motion to strike Greenway's reply brief from its motion to compel arbitration and Tisinger's accompanying affidavit. Briefs and affidavits, however, are not pleadings.  See Fed.R.Civ.P. 7(a) (defining pleadings as complaints,

### 1. Enforceability under SCUAA and FAA

Low Country first argues that the arbitration provision is unenforceable because it fails to comply with the requirements of the SCUAA.  Pl.'s Resp. 3–5.  In response, Greenway argues that the SCUAA is preempted by the FAA because the contract involves interstate commerce.  Def.'s Reply 2–6.  The SCUAA states that a contract that is subject to arbitration under the SCUAA "shall be typed in underlined capital letters, or rubber-stamped prominently, on the first page of the contract and unless such notice is displayed thereon the contract shall not be subject to arbitration."  S.C. Code Ann. § 15-48-10(a).  The words of the notice requirements under the SCUAA are clear and unambiguous and therefore must be strictly construed according to their literal meaning. See Soil Remediation Co. v. Nu-Way Envtl., Inc., 476 S.E.2d 149, 151 (S.C. 1996) ("Our conclusion is compelled not only by the unambiguous wording of section 15-48-10, but also by case law, which has strictly construed this provision.").  The arbitration provision at issue is not underlined or rubber-stamped as required under section 15-48-10.

If an arbitration agreement fails to comply with the SCUAA, it may still be enforced under the FAA.  See, e.g., Osborne v. Marina Inn at Grande Dunes, LLC, No. 4:08-cv-0490, 2009 WL 3152044, at *4 (D.S.C. Sept. 23, 2009) ("The fact that the

---

answers and replies to counterclaims).  Therefore, motions to strike may not be used to exclude affidavits and reply briefs.  See Newsome v. Webster, 843 F.Supp. 1460, 1464 (S.D. Ga. 1994) (motion to strike not appropriate to challenge affidavits);  Welch v. Bd. of Dirs., 146 F.R.D. 131, 138–39 (W.D. Pa. 1993) (same).  South Carolina courts have similarly recognized this limitation on motions to strike.  See,e.g., Kollyns v. Chavez, No. 3:05-cv-3328, 2007 WL 188667, at *7 (D.S.C. Jan. 19, 2007) ("A motion to strike pursuant to Rule 12(f) is not available to strike material set forth in affidavits") (internal citations omitted). A motion to strike, therefore, is not the proper way to challenge Greenway's responsive filing or Tisinger's affidavit.   Additionally, a *properly* made motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted.  First Fin. Sav. Bank v. Am. Bankers Ins. Co., 783 F. Supp. 963, 966 (E.D.N.C.  991); United States v. Fairchild Indus. Inc., 766 F.Supp. 405, 408 (D. Md. 1991).  Low Country fails to provide sufficient support to warrant such a drastic remedy.  Most importantly, the court's adjudication of the motion to compel arbitration does not depend on Tisinger's second affidavit, nor does it rest on arguments made in Greenway's reply.  The court bases its ruling on Greenway's motion to compel on the petition for removal and the facts alleged in the complaint regarding the nature of both businesses and the terms of the contract.  Therefore, the court denies Low Country's motion to strike.

Agreement indicates that it is governed by the SCUAA is inapposite."). In Doctor's

Associates, Inc. v. Casarotto, the Supreme Court enforced an arbitration provision that

failed to comply with the notice requirements of Montana law but that was subject to the

FAA. 517 U.S. 681, 116 (1996). The Court found that the state notice requirements

conflicted with § 2 of the FAA because the state law conditioned the enforceability of

arbitration agreements on special notice requirements not applicable to contracts

generally. Id. ("By enacting § 2, we have several times said, Congress precluded States

from singling out arbitration provisions for suspect status, requiring instead that such

provisions be placed 'upon the same footing as other contracts.'"). Therefore, the court

held that the FAA preempts state laws that render arbitration provisions unenforceable for

lack of compliance with special notice requirements. Id.

　　　After the Supreme Court's decision in Casarotto, the South Carolina Supreme

Court began to enforce arbitration provisions in contracts involving interstate commerce,

even when the arbitration agreements failed to comply with the notice requirements of

the SCUAA. See, e.g., Soil Remediation Co., 476 S.E.2d at 152–53 (enforcing an

arbitration agreement in a contract involving interstate commerce even though the

arbitration provision was not underlined as required under the SCUAA). In Soil

Remediation Co., the court found that "[b]ecause section 15-48-10(a) singles out

arbitration agreements, it directly conflicts with section 2 of the FAA." Id. at 152. The

court stated that if an arbitration provision is "covered by the FAA, then Casarotto

directly controls, and the FAA preempts S.C. Code Ann. § 15–48–10(a) . . . ." Id.

　　　Section 2 of the Federal Arbitration Act provides that a "written provision in any

maritime transaction or a contract evidencing a transaction involving commerce to settle

9

by arbitration a controversy thereafter arising out of such contract or transaction . . . shall

be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract."  9 U.S.C. § 2 (emphasis added).  "Commerce" is

defined as "commerce among the several States or with foreign nations . . . ."  9 U.S.C.

§ 1.  According to the United States Supreme Court, the FAA extends to the bounds of

Congress's commerce clause power.  Allied-Bruce Terminix Cos., Inc. v. Dobson, 513

U.S. 265, 281 (1995) (expanding the limits of the FAA and holding that the FAA applies

to all contracts involving interstate commerce, even if the parties did not contemplate an

interstate commerce connection); Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003)

("We have interpreted the term 'involving commerce' in the FAA as the functional

equivalent of the more familiar term 'affecting commerce'-words of art that ordinarily

signal the broadest permissible exercise of Congress' Commerce Clause power."

Therefore, if the contract between Low Country and Greenway involves interstate

commerce, the FAA applies to the arbitration agreement at issue and the notice

requirements of section 15-48-10 will not prevent its enforcement.

Another district court in this circuit applied the FAA to a contract between diverse

parties in which one party agreed to market a computer software program exclusively

within the bounds of one state.  See Lacheney v. ProfitKey Int'l, Inc., 818 F. Supp. 922,

923 (E.D. Va. 1993), abrogated on other grounds by Allied-Bruce Terminix Cos., 513

U.S. 265 (applying the FAA to a contract for the sale of computer software between

diverse parties).[3]  Other courts have also applied the FAA to software development

---

[3] Although Lacheney was abrogated by the Supreme Court's decision in Allied-Bruce, the Court overturned Lacheney's holding that the parties to a contract must contemplate an interstate commerce connection, thereby expanding the reach of the FAA to all matters within Congress's commerce power.  See Allied-Bruce, 513 U.S. at 281.

10

contracts.  See, e.g.,  Positive Software Solutions, Inc. v. New Century Mortg. Corp., 259

F. Supp. 2d 531, 533 (N.D. Tex. 2003) (compelling arbitration under the FAA for all

disputes arising out of a software development contract).

The contract at issue contains an agreement between diverse parties:  Low

Country is a South Carolina corporation with its principal place of business in Hampton

County, South Carolina, and Greenway is a Delaware Corporation with its principal place

of business in Carroll County, Georgia.  Def.'s Mot. to Compel Ex. 1, at 1.  Under the

terms of the contract, the parties agreed to the "purchase and installation of an electronic

medical records software program."  Def.'s Mot. 1.  The agreement involves the sale of

goods and the provision of services, including the shipment of software, hardware, and

materials and the installation and licensing of software.  Def.'s Mot. Ex. 1.  The

contract's terms outline procedures for software maintenance, hardware staging, and data

migration.  Id.  Based on the nature of the agreement and the diversity of the parties, the

contract at issue "involves" interstate commerce under the Supreme Court's expansive

interpretation of the FAA.  See Allied-Bruce, 513 U.S. at 281.  Although the arbitration

provision fails to comply with the special notice requirements of the SCUAA, the FAA

applies to the contract because it involves interstate commerce.  Therefore, the SCUAA

does not preclude enforcement of the arbitration agreement between Low Country and

Greenway.

Low Country also argues that if the FAA were to apply to the agreement, there

would be no meeting of the minds between the parties because the arbitration provision

states that the agreement is subject to the SCUAA.  Pl.'s Resp. 3.  This argument is

without merit.  The application of the FAA to an arbitration provision does not

11

completely invalidate an agreement that a contract will be governed by the SCUAA.  In

Munoz v. Green Tree Fin. Corp., the South Carolina Supreme Court clarified its decision

in Soil Remediation Co., stating that although "[s]tate law was [] preempted to the extent

it would have invalidated the arbitration agreement[,] . . . [t]he parties to a contract are

otherwise free to agree that [the] state Arbitration Act will apply and this agreement shall

be enforceable even if interstate commerce is involved."  542 S.E.2d 360, 364 n.2 (S.C.

2001) (citing Soil Remediation Co., 467 S.E.2d 149.).  Thus, although the FAA operates

to enforce arbitration provisions that would otherwise be invalid under the SCUAA, the

contract will still be governed by the remaining provisions of the SCUAA and South

Carolina substantive law.  Id.  As a result, Greenway and Low Country still had a

meeting of the minds that their agreement would be subject to arbitration.  Although the

arbitration agreement at issue does not comply with the notice requirements of section

15-48-10 of the SCUAA, it is enforceable under the FAA as part of a contract involving

interstate commerce.

### 2.    Unconscionability

Low Country also claims that the arbitration provision is unconscionable and

therefore unenforceable because Low Country lacked a meaningful choice.  Pl.'s Resp.

5–8.  To support its argument, Low Country states that the contract was "pre-negotiated"

without any discussion of the arbitration provision and entered into without legal advice.

Id. at 6–7.  In response, Greenway argues that the arbitration provision is not

unconscionable because it applies equally to both parties and is subject to the remaining

provisions of the SCUAA, which contemplate an unbiased decision by a neutral decision

maker.  Def.'s Reply 7–8.  Further, Greenway argues that the parties negotiated the terms

12

of the contract, including the arbitration agreement, through Low Country's own agent,

CITIA-SC, who <u>required</u> the agreement to include an arbitration provision.[4]  <u>Id.</u> at 8.

"Unconscionability has been recognized as the absence of meaningful choice on

the part of one party due to one-sided contract provisions, together with terms which are

so oppressive that no reasonable person would make them and no fair and honest person

would accept them."  <u>Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.</u>, 472 S.E.2d 242,

245 (S.C. 1996).  In determining whether there is an absence of meaningful choice, courts

should consider numerous factors, including the relative disparity of bargaining power

between the parties, the nature of the plaintiff's injuries, the relative sophistication of the

parties, and the conspicuousness of the arbitration provision.  <u>Simpson v. MSA of Myrtle</u>

<u>Beach, Inc.</u>, 644 S.E.2d 663, 669 (S.C. 2007) (citation omitted).  "[I]nequality of

bargaining power alone will not invalidate an arbitration agreement."  <u>Munoz</u>, 542 S.E.2d

at 365 n.5.  The Fourth Circuit instructs courts to focus on whether the arbitration clause

is geared towards achieving an unbiased decision by a neutral decision maker.  <u>See</u>

<u>Hooters of Am., Inc. v. Phillips</u>, 173 F.3d 933, 938 (4th Cir. 1999).

Although the FAA preempts section 15-48-10 of the SCUAA, the remaining

provisions of the SCUAA still apply to the contract.  Under the SCUAA, three arbitrators

are appointed—the party moving to compel arbitration appoints one arbitrator, the party

opposing arbitration appoints one arbitrator, and the two appointed arbitrators pick the

third.  S.C. Code Ann. § 15-48-30.  The arbitrators must act by majority.  <u>Id.</u> § 15-48-40.

Therefore, the SCUAA does not favor either party, but rather provides for a neutral

decision making process.

---

[4] CITIA-SC assists health care providers in South Carolina in implementing electronic records services and
acted as Low Country's agent during the negotiations of the contract.  Def.'s Reply 8.

Low Country is a healthcare provider in Hampton Country, South Carolina.  Pl.'s Resp. 7.  There are two physicians, three certified family nurse practitioners, one certified physician assistant, and thirty employees at its facility in Hampton.  Id.  After reviewing a presentation on various electronic health records providers, consulting with CITIA-SC, and conducting further research on Greenway, Low Country's executive director, Harvey, engaged in discussions with Greenway regarding its software system services. Pl.'s Resp. Ex. 1, ¶¶ 5–7.  Based on its independent research, Low Country determined that Greenway appeared to be a reputable national electronic health records provider.  Id. ¶ 6.  Harvey executed the contract with Greenway on behalf of Low Country.  Id. at ¶ 8. Low Country "did not retain legal counsel to review" the agreement prior to its execution.  Pl.'s Resp. 7.

Low Country and Greenway are both sophisticated parties.  The record shows that Low Country entered into a contract with Greenway after conducting independent research, exploring its options, consulting with CITIA-SC, and discussing the software system with Greenway.  Low Country did not have to contract with Greenway, but rather chose Greenway after researching other electronic health records providers.  There is no evidence that Low Country was forced to hastily sign the contract.  Low Country easily could have retained legal counsel to review the agreement prior to its execution, and its failure to do so should not be used against Greenway.  Although there is no evidence that the parties specifically discussed the arbitration provision, it appears in all caps font on the front page of the contract.  Def.'s Mot. Ex. 1, at 1.  Low Country's agent, Harvey, signed the first page.  Id.  A party signing an agreement is presumed to have read it. Munoz, 542 S.E.2d at 365 n.6 (citing Hood v. Life & Cas. Ins. Co. of Tenn., 175 S.E. 76

(S.C. 1934)).  Further, Low Country's own agent, CITIA-SC, required the parties to

include the arbitration provision and assisted in the negotiations.  Thus, the record shows

that the arbitration provision is geared towards an unbiased decision by a neutral decision

maker and does not represent a lack of meaningful choice.  Based on the foregoing, the

court finds that under general contract principles and South Carolina law, the arbitration

agreement is not unconscionable.

### 3.    Scope of Arbitration Provision

Lastly, Low Country argues that the arbitration provision does not apply because

its claims fall outside the scope of the arbitration provision.  Pl.'s Resp. 8–9.  Low

Country argues that although labeled as misrepresentation, the allegations in its complaint

are for fraud; thus, Low Country argues that the court should refuse to enforce an

otherwise enforceable arbitration provision because the facts reveal "illegal or outrageous

acts."  Id. (citing Chassereau v. Global-Sun Pools, Inc., 644 S.E.2d 718, 720 (S.C. 2007)).

In response, Greenway argues that Low Country's claims for breach of warranty and

misrepresentation fall squarely within the scope of the arbitration provision.  Def.'s Reply

11–13.

Low Country argues that the allegations contained in its complaint are for

fraudulent misrepresentation.  See Chassereau, 644 S.E.2d at 720 (noting that South

Carolina courts refuse to enforce arbitration agreements where the facts involve "illegal

or outrageous acts that no reasonable person would have foreseen at the time the parties

executed the agreement to arbitrate").  In its complaint, Low Country alleges that

Greenway's agent misrepresented that the system worked properly and had not

experienced problems in any other office.  These allegations do not reveal illegal or

outrageous acts that no reasonable person would foresee at the time the contract was executed.  Therefore, regardless of whether the claims as alleged are considered misrepresentation or fraud, they do not rise to the standard under Chassereau such that the arbitration provision should not be enforced.

The arbitration clause at issue states that "the agreement is subject to arbitration pursuant to the South Carolina Uniform Arbitration Act."  Def.'s Mot. Ex. 1, 1.  Low Country's claims arise directly out of the agreement.  Further, any doubts regarding the scope of the arbitration provision must be resolved in favor of arbitration to promote the strong federal policies in support of arbitration.  See Am. Recovery Corp., 96 F.3d at 92 (citing Peoples Sec. Life Ins. Co., 867 F.2d at 812).  For the aforementioned reasons, the court finds that Low Country's claims fall within the arbitration provision.  Thus, because the claims fall within the arbitration agreement enforceable under the FAA and because the agreement is not unconscionable, the court grants Greenway's motion to compel arbitration.  Low Country's claims are hereby dismissed without prejudice.

In light of the court's ruling on Low Country's motion to remand and motion to strike and Greenway's motion to compel arbitration, the court deems moot Greenway's motion to dismiss under Rule 12(b)(6) and motion for a protective order and Low Country's motion to stay deadlines.

## IV.  CONCLUSION

For the reasons stated above, the court **GRANTS** Greenway's motion to compel arbitration and dismisses Low Country's claims without prejudice, deems **MOOT** Greenway's motion to dismiss, **DENIES** Low Country's motion to remand, deems **MOOT** Low Country's motion to stay deadlines, **DENIES** Low Country's motion to strike, and deems **MOOT** Greenway's motion for protective order.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 5, 2014**
**Charleston, South Carolina**